UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

INTERNATIONAL UNION OF BRICKLAYERS &
ALLIED CRAFTWORKERS, LOCAL NO. 3, and

DUANE VORHIS, JOSHUA SCOTT, BRIAN EDWARDS
and BRETT SHERMAN, as Trustees of the Bricklayers
& Allied Craftworkers Local 8 Welfare Fund and the Bricklayers
& Allied Craftworkers Local 8 Pension Fund, and

ANTHONY DiPERNA, RICHARD WILLIAMSON,
SCOTT STRINGER, FRANK PIETROWSKI,
JASON REQUA, AARON HILGER, JAMES LOGAN
BRADLEY WALTERS, JEFFREY MORRIS and
BRIAN DONNELLY, as Trustees of the Bricklayers & Allied
Craftworkers Local No. 3 NY Individual Account Retirement Fund
and the Bricklayers & Allied Craftworkers Local 3, New York,
Joint Apprenticeship and Training Committee,

Plaintiffs,

   -against-

ANTHONY J GIAMMARINO ASSOCIATES, LLC
d/b/a AJG ASSOCIATES, LLC, and

ANTHONY J. GIAMMARINO,

Defendants.

**COMPLAINT**
Civ. Case No. ___3:20-CV-0071___ (LEK/TWD)

---

Plaintiffs, INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTWORKERS, LOCAL NO. 3 (the "Union"); and DUANE VORHIS, JOSHUA SCOTT, BRIAN EDWARDS and BRETT SHERMAN, as Trustees of the Bricklayers & Allied Craftworkers Local 8 Welfare Fund (the "Ithaca Welfare Fund") and the Bricklayers & Allied Craftworkers Local 8 Pension Fund (the "Ithaca Pension Fund"); and ANTHONY DiPERNA, RICHARD WILLIAMSON, SCOTT STRINGER, FRANK PIETROWSKI, JASON REQUA, AARON HILGER, JAMES LOGAN, BRADLEY WALTERS, JEFFREY MORRIS and BRIAN

DONNELLY, as Trustees of the Bricklayers & Allied Craftworkers Local No. 3 NY Individual Account Retirement Fund (the "BAC 3 Annuity Fund") and the Bricklayers & Allied Craftworkers Local No. 3, New York, Joint Apprenticeship and Training Committee (the "BAC 3 Training Fund"), by and through their attorneys, Lipsitz Green Scime Cambria, LLP, as and for their Complaint against Defendants ANTHONY J GIAMMARINO ASSOCIATES, LLC d/b/a AJG ASSOCIATES, LLC ("AJG") and ANTHONY J. GIAMMARINO ("GIAMMARINO"), herein allege as follows:

## NATURE OF THE ACTION AND JURISDICTION

1. This is a civil action brought pursuant to, *inter alia*, Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA") as amended [29 U.S.C. §§1132(a)(3), and 1145], and Section 301 of the Labor-Management Relations Act of 1947 (29 U. S. C. §185) (hereinafter referred to as the "LMRA") by the Union and the Trustees of the Funds for breach of contract, injunctive and other equitable relief.

2. This Complaint alleges that by failing, refusing or neglecting to comply with specific statutory and contractual obligations, Defendant AJG violated its collective bargaining agreement with Plaintiff Union, the respective trust agreements of the Funds (hereinafter the "Trusts"), ERISA and/or the LMRA.

3. This Complaint further alleges that Defendant GIAMMARINO, as the controlling officer and managing agent of Defendant AJG, and as a fiduciary within the meaning of Section 3(21) of ERISA [29 U.S.C. §§ 1002(21)(A)], breached his fiduciary duty to the Funds by failing to effect payment of employee fringe benefit contributions from Defendant AJG to the Ithaca Welfare Fund and the Ithaca Pension Fund.

4. Jurisdiction of this Court is invoked under the following statutes:

2

3733621, 1, 063840.0007

(a)    Section 502 (e) (1) and (f) of ERISA [29 U.S.C. §1132(e)(1) and (f)]:

(b)    Section 301 of the LMRA (29 U.S.C. §185):

(c)    28 U. S. C. §1331 (federal question); and

(d)    28 U. S. C. §1337 (civil actions arising under the Act of Congress regulating commerce).

5.    Venue properly lies in this district under Section 502(e)(2) of ERISA [(29 U. S. C. §1132 (e)(2)] and Section 301 of LMRA (29 U. S. C. § 185).

## PARTIES

### A. Plaintiff Labor Union

6.    Plaintiff Union is a labor organization within the meaning of 29 U.S.C. §§ 152(5) and 185, which represents employees in an industry affecting commerce, as defined in 29 U.S.C. § 142 and 29 U.S.C § 1002(4).  The Union maintains an office at 33 Saginaw Drive, Rochester, NY 14623.

7.    Plaintiff Union is comprised of several Chapters, based on geographical jurisdiction, including but not limited to the Ithaca, Binghamton, Rochester, Buffalo and Jamestown Chapters.

8.    Plaintiff Union, pursuant to the terms of various collective bargaining agreements between Plaintiff Union and signatory employers, collects union dues and assessments, including PAC and Organizational Fund assessments, which such employers deduct from employees' wages and remit to Plaintiff Union.

9.    Plaintiff Union, pursuant to the terms of various collective bargaining agreements between Plaintiff Union and signatory employers, is an authorized collection agent for the Administration and Safety Programs ("ASP") established by signatory employer associations pursuant to various collective bargaining agreements between Plaintiff Union and signatory

3

employers.    The purpose of the ASPs is to finance activities related to safety and accident prevention, training programs, public relations, industry relations and collective bargaining.

10.    Plaintiff Union, pursuant to the terms of various collective bargaining agreements between Plaintiff Union and signatory employers, is an authorized collection agent for the Bricklayers Local 8 Savings Plan (the "Ithaca Savings Plan").  The Ithaca Savings Plan is a benefit plan funded solely by employee contributions which are deducted by employers from employees' wages and then remitted to Plaintiffs.

11.    Plaintiff Union, pursuant to the terms of various collective bargaining agreements between Plaintiff Union and signatory employers, is an authorized collection agent for the Joint Administrative Board (the "J.A.B. Fund").  The J.A.B. Fund is a labor-management committee within the meaning of Section 302(c)(9) of the LMRA, operating for the purpose of promoting the efficiency and economic competitiveness of Plaintiff Union and signatory contractors.

12.    Plaintiff Union, pursuant to the terms of various collective bargaining agreements between Plaintiff Union and signatory employers, is an authorized collection agent for Unions and Businesses United in Construction ("UNICON" or the "LM Fund").  The LM Fund is a labor-management committee within the meaning of Section 302(c)(9) of the LMRA, operating for the purpose of promoting the efficiency and economic competitiveness of Plaintiff Union and signatory contractors.  The LM Fund is funded by employer contributions.

**B. Plaintiffs Trustees of the Funds**

13.    Plaintiffs DUANE VORHIS, JOSHUA SCOTT, BRIAN EDWARDS and BRETT SHERMAN are the individual Trustees of jointly administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with 29 U.S.C §§ 185(c)(5) and 185(c)(6), namely, the Ithaca Welfare Fund and the

3733621, 1, 063840.0007

Ithaca Pension Fund.

14.    The Ithaca Welfare Fund is an employee benefit plan within the meaning of 29 U.S.C. § 1002(2) and (3), and is a multi-employer plan within the meaning of 29 U.S.C. §§ 1002(37) and 1145.  The purpose of the Ithaca Welfare Fund is to provide health and welfare benefits to eligible union employees on whose behalf employers contribute to the Ithaca Welfare Fund pursuant to collective bargaining agreements between employers and the Union.

15.    The Ithaca Pension Fund is an employee benefit plan within the meaning of 29 U.S.C. § 1002(1), (2) and (3), and is a multi-employer plan within the meaning of 29 U.S.C. §§ 1002(37) and 1145.  The purpose of the Ithaca Pension Fund is to provide pension benefits to eligible union employees on whose behalf employers contribute to the Ithaca Pension Fund pursuant to collective bargaining agreements between employers and the Union.

16.    The Ithaca Welfare Fund and the Ithaca Pension Fund maintain their offices and are administered at 701 West State Street, Ithaca, NY 14580.

17.    Plaintiffs ANTHONY DiPERNA, RICHARD WILLIAMSON, SCOTT STRINGER, FRANK PIETROWSKI, JASON REQUA, AARON HILGER, JAMES LOGAN, BRADLEY WALTERS, JEFFREY MORRIS and BRIAN DONNELLY are the individual Trustees of jointly administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with 29 U.S.C §§ 185(c)(5) and 185(c)(6), namely, the BAC 3 Annuity Fund and the BAC 3 Training Fund.

18.    The BAC 3 Annuity Fund is an employee benefit plan within the meaning of 29 U.S.C. § 1002(1), (2) and (3), and is a multi-employer plan within the meaning of 29 U.S.C. §§ 1002(37) and 1145.  The purpose of the BAC Annuity Fund is to provide various fringe benefits to eligible union employees on whose behalf employers contribute to the BAC 3 Annuity Fund

5

3733621, 1, 063840.0007

pursuant to collective bargaining agreements between employers and the Union.

19.    The BAC Training Fund is an employee benefit plan within the meaning of 29 U.S.C. § 1002(1), (2) and (3), and is a multi-employer plan within the meaning of 29 U.S.C. §§ 1002(37) and 1145.  The purpose of the BAC 3 Training Fund is to provide apprentice training and journeyperson retraining to eligible union employees on whose behalf employers contribute to the BAC 3 Training Fund pursuant to collective bargaining agreements between employers and the Union.

20.    The BAC 3 Annuity Fund and the BAC 3 Training Fund maintain their offices and are administered at 33 Saginaw Drive, Rochester, NY 14623.

21.    All of the above-referenced funds are hereinafter referred to collectively as the "Funds."

22.    All of the above-referenced Plaintiffs are hereinafter referred to collectively as the "Trustees" or the "Trustees of the Funds."

23.    Plaintiffs Trustees of the Funds are fiduciaries within the meaning of 29 U.S.C. §§ 1002(21) and 1132, and bring this action in their fiduciary capacities.

### C. Defendants

24.    Upon information and belief, at all times material hereto, Defendant AJG has been a for-profit domestic corporation doing business in the State of New York as an employer within the meaning of Sections 3(5) and 515 of ERISA [29 U.S.C. §§ 1002(5) and 1145], and has been an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

25.    Defendant AJG maintains offices at 7 South Washington Street, Binghamton, New York 13903.

3733621, 1, 063840.0007

26. Upon information and belief, at all times material hereto, Defendant GIAMMARINO is and has been the controlling officer and managing agent of Defendant AJG and a fiduciary within the meaning of Section 3(21) of ERISA [29 U.S.C. §§ 1002(21)(A)] with respect to contributions to the Funds that are currently due and owing and which may become due and owing to the Funds from Defendant AJG during the pendency of this action.

27. Defendant GIAMMARINO maintains a residence at 2420 High Street, Vestal, New York 13850.

## THE AGREEMENTS

28. Defendant AJG is signatory to a collective bargaining agreement with Plaintiff Union, effective May 1, 2017 through April 30, 2022 (the "CBA"). Relevant portions of the CBA are attached hereto as **Exhibit A**. A copy of Defendant AJG's March 21, 2018 Signatory Sheet is attached hereto as **Exhibit B**.

29. Defendant AJG has not submitted any Employer Withdrawal Notice to the Union.

30. Defendant AJG has not withdrawn from the CBA.

31. Relevant portions of the Agreement and Declaration of Trust ("Trust Agreement") for the Ithaca Welfare Fund are attached hereto as **Exhibit C**.

32. Employer contributions due and owing to the Ithaca Welfare Fund constitute assets of the Ithaca Welfare Fund. *See* **Exhibit C**.

33. Relevant portions of the Trust Agreement for the Ithaca Pension Fund are attached hereto as **Exhibit D**.

34. Employer contributions due and owing to the Ithaca Pension Fund constitute assets of the Ithaca Pension Fund. *See* **Exhibit D**.

35. A copy of Plaintiffs' Collections Policies are attached hereto as **Exhibit E**.

3733621, 1, 063840.0007

36.     Pursuant to the terms of the CBA, Trust Agreements and Collections Policies, Defendant AJG is required, *inter alia*, to:

a.  File contribution reports (sometimes referred to as "Remittance Reports") with the Funds by the fifteenth (15th) day of the month following the month during which the work covered by the applicable CBA (hereinafter referred to as "covered work") was performed;

b.  Pay by the fifteenth (15th) day of the month following the month during which the covered work was performed monetary contributions to the Ithaca Welfare Fund at the rates set forth in the CBA for all hours of work performed by Defendant AJGs employees covered by the CBA; and

c.  Pay by the fifteenth (15th) day of the month following the month during which the covered work was performed monetary contributions to the Ithaca Pension Fund at the rates set forth in the CBA for all hours of work performed by Defendant AJG's employees covered by the CBA; and

d.  Pay by the fifteenth (15th) day of the month following the month during which the covered work was performed monetary contributions to the BAC 3 Annuity Fund at the rates set forth in the CBA for all hours of work performed by Defendant AJG's employees covered by the CBA; and

e.  Pay by the fifteenth (15th) day of the month following the month during which the covered work was performed monetary contributions to the BAC 3 Training Fund at the rates set forth in the CBA for all hours of work performed by Defendant AJG's employees covered by the CBA; and

f.  Deduct members' authorized Savings Plan contributions from the wages of each

8

3733621, 1, 063840.0007

of its employees performing covered work at the rates set forth in the CBA and remit such deducted Savings Plan contributions to Plaintiff Union by the fifteenth (15th) day of the month following the month during which the covered work was performed by AJG's employees; and

g. Deduct Union membership dues and dues assessments from the wages of each of its employees performing covered work at the rates set forth in the CBA and remit such deducted Union membership dues to Plaintiff Union by the fifteenth (15th) day of the month following the month during which the covered work was performed by AJG's employees; and

h. Pay monetary contributions to the ASP at the rates set forth in the CBA for all hours of work performed by Defendant AJG's employees covered by the CBA by the fifteenth (15th) day of the month following the month during which the covered work was performed AJG's employees.

i. Pay monetary contributions to the J.A.B. Fund at the rates set forth in the CBA for all hours of work performed by Defendant AJG's employees covered by the CBA by the fifteenth (15th) day of the month following the month during which the covered work was performed AJG's employees.

j. Pay monetary contributions to the LM Fund at the rates set forth in the CBA for all hours of work performed by Defendant AJG's employees covered by the CBA by the fifteenth (15th) day of the month following the month during which the covered work was performed AJG's employees.

37.    Defendant AJG failed to pay certain contributions due and owing to the Funds and the Union for covered work performed during the period May 1, 2019 through November 30,

3733621, 1, 063840.0007

2019. Copies of Remittance Reports for delinquent contributions, dues and assessments are attached hereto as **Exhibit F**.

38. Additionally, a routine audit conducted by Plaintiffs' accountants revealed that Defendant AJG both underreported and overreported contributions owed to Plaintiff Union and the Funds. Spreadsheets demonstrating underreported and overreported hours are attached hereto as **Exhibit G**.

39. A spreadsheet demonstrating delinquent contributions, liquidated damages and interest calculated through January 10, 2019 is attached hereto as **Exhibit H**.

40. While Defendants eventually remitted some (but not all) delinquent contributions, dues and assessments owed during the period May 1, 2019 through October 31, 2019 to Plaintiff Union and the Funds (*see* **Exhibit H**), Defendants' late payments required the assessment of interest and liquidated damages; Defendants have failed to remit any payment for interest or liquidated damages.

## REMEDIES FOR BREACH OF OBLIGATIONS TO THE FUNDS AND UNION

41. Pursuant to the terms of Section 515 of ERISA (29 U.S.C. § 1145), employers such as Defendant AJG are required to pay employee fringe benefit contributions to Plaintiffs in accordance with the terms and conditions of the CBA.

42. Failure to make such payment or to timely effect payment of the contributions constitutes a violation of the CBA and Section 515 of ERISA (29 U.S.C. § 1145).

43. Section 502 of ERISA (29 U.S.C. § 1132) provides that, upon a finding of an employer violation as set forth above, the Funds shall be awarded the unpaid contributions, plus interest and liquidated damages on the unpaid and/or untimely paid contributions (both computed at the rate provided under a fund's plan or, if none, at the rate prescribed under Section 6621 of

3733621, 1, 063840.0007

Title 26 of the United States Code [26 U.S.C. § 6621]), together with reasonable attorneys' fees and costs of the action, and such other legal or equitable relief as the court deems appropriate.

44.    Pursuant to ERISA Sections 403(a) and 404, the applicable regulations and case law, fiduciaries of an employee benefit fund are personally liable for fund assets that were not properly payable to them and which were retained and/or diverted for their own use or benefit.

45.    Pursuant to Plaintiffs' Collections Policies, Plaintiffs are entitled to interest at the rate of two percent (2%) per month, compounded monthly, and calculated from the date the contributions, union dues and dues assessments were due to Plaintiff Union and the Funds, liquidated damages in the amount of twenty percent (20%) of the amount of the delinquent contributions and all attorneys' fees, paralegal fees, accountants' fees, audit fees and other costs of collection of all required fund contributions, dues and assessments. *See* **Exhibit E**.

46.    The failure of an employer to pay contributions to the Funds, or to retain and remit the withheld Union dues and dues assessments to Plaintiff Union, constitutes a breach of contract between an employer and a labor organization within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

### AS AND FOR PLAINTIFFS' FIRST CLAIM FOR RELIEF

**(PLAINTIFFS' CLAIM AGAINST DEFENDANTS AJG AND GIAMMARINO FOR DELINQUENT ITHACA WELFARE FUND CONTRIBUTIONS)**

47.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 46 of this Complaint, as if fully set forth herein.

48.    Pursuant to the CBA and Trust Agreement, Defendant AJG must pay contributions to the Ithaca Welfare Fund at the rates set forth in the CBA for all hours worked by its employees covered by the CBA.

49.    Defendant GIAMMARINO was and is, at all times relevant hereto, the principal

3733621, 1, 063840.0007

officer and managing agent of Defendant AJG and was and is responsible for the submission of remittance reports setting forth the total of all contributions owing to the Funds, and for remitting such amounts to the Funds on or before the dates set forth in the CBA.

50. As the principal officer and managing agent of Defendant AJG, Defendant GIAMMARINO, at all times relevant hereto, had the authority to and did make decisions as to how the assets of Defendant AJG would be distributed, including, *inter-alia,* which creditors of Defendant AJG would or would not be paid by Defendant AJG.

51. Union members were employed by Defendant AJG during the period May 1, 2019 through November 30, 2019 and performed work for Defendant AJG covered by the CBA.

52. Upon information and belief, Defendant GIAMMARINO decided that Defendant AJG would not pay, and indeed failed to pay, certain contributions to the Ithaca Welfare Fund as required by the CBA, for work performed by Defendant AJG's employees during the period May 1, 2019 through November 30, 2019.

53. Employee fringe benefit contributions became assets of the Ithaca Welfare Fund when they became due and payable to the Ithaca Welfare Fund by Defendant AJG.

54. Defendant GIAMMARINO was a fiduciary with respect to the delinquent contributions owing from Defendant AJG to the Ithaca Welfare Fund for covered work performed by Defendant AJG's employees during the period May 1, 2019 through November 30, 2019 at the time such contributions became due and payable to the Ithaca Welfare Fund by Defendant AJG, pursuant to Section 3(21) of ERISA [29 U.S.C. §§ 1002(21)(A)].

55. Further, Defendant GIAMMARINO is a fiduciary with respect to any contributions required to be made by Defendant AJG during the pendency of this action at the time such contributions become due and owing to the Funds.

12

56. Defendant GIAMMARINO breached his fiduciary duty with respect to the Ithaca Welfare Fund by failing to effect payment from Defendant AJG to the Ithaca Welfare Fund for covered work performed by its employees during the period May 1, 2019 through November 30, 2019 in violation of ERISA Section 409(a) [29 U.S.C. §1109].

57. Defendant AJG's failure to make payment, or timely effect payment, of employee fringe benefit contributions to the Ithaca Welfare Fund constitutes violations of the CBA, the applicable Trust Agreements, 29 U.S.C. § 301 and of Section 515 of ERISA (29 U.S.C. § 1145).

58. While Defendants eventually remitted some contributions owed during the period May 1, 2019 through October 31, 2019 to the Ithaca Welfare Fund (*see* **Exhibit H**), such payments were late and required the assessment of interest and liquidated damages; Defendants have failed to remit any payment for interest or liquidated damages.

59. Accordingly, Defendants AJG and GIAMMARINO are liable to Plaintiffs for:

   a. Delinquent employee fringe benefit fund contributions to the Ithaca Welfare Fund in the amount of $24,323.60 for covered work performed by its employees during the period May 1, 2019 through November 30, 2019 plus any additional amounts which may come due during the pendency of this lawsuit (*see* **Exhibit H**); and

   b. interest on the unpaid and/or untimely paid contributions in the amount of $3,238.02 at the rate of two percent (2%) per month, compounded monthly, and calculated from the date the contributions were due, which shall continue to accrue during the pendency of this action (*id.*); and

   c. liquidated damages in the amount of $9,667.29, which is equal to twenty percent (20%) of the total delinquent contributions to the Ithaca Welfare Fund (*id.*).

13

## AS AND FOR PLAINTIFFS' SECOND CLAIM FOR RELIEF

### (PLAINTIFFS' CLAIM AGAINST DEFENDANTS AJG AND GIAMMARINO FOR DELINQUENT EMPLOYEE FRINGE BENEFIT CONTRIBUTIONS TO THE ITHACA PENSION FUND)

60.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 59 of this Complaint, as if fully set forth herein.

61.     Pursuant to the CBA and the Trust Agreements, Defendant AJG was required to make full and timely payments to the Funds for all covered work performed by its employees at the rates and times set forth in the CBA.

62.     Defendant GIAMMARINO was and is, at all times relevant hereto, the principal officer and managing agent of Defendant AJG and was and is responsible for the submission of remittance reports setting forth the total of all contributions owing to the Funds, and for remitting such amounts to the Funds on or before the dates set forth in the CBA.

63.     As the principal officer and managing agent of Defendant AJG, Defendant GIAMMARINO, at all times relevant hereto, had the authority to and did make decisions as to how the assets of Defendant AJG would be distributed, including, *inter-alia,* which creditors of Defendant AJG would or would not be paid by Defendant AJG.

64.     Union members were employed by Defendant AJG during the period May 1, 2019 through November 30, 2019 and performed work for Defendant AJG covered by the CBA.

65.     Defendant GIAMMARINO decided that Defendant AJG would not pay, and indeed failed to pay, certain contributions to the Ithaca Pension Fund, as required by the CBA, for work performed by Defendant AJG's employees during the period May 1, 2019 through November 30, 2019.

66.     Employee fringe benefit contributions became assets of the Ithaca Pension Fund

3733621, 1, 063840.0007

when they became due and payable to the Ithaca Pension Fund by Defendant AJG.

67. Defendant GIAMMARINO was a fiduciary with respect to the delinquent contributions owing from Defendant AJG to the Ithaca Pension Fund for covered work performed by Defendant AJG's employees during the period May 1, 2019 through November 30, 2019 at the time such contributions became due and payable to the Ithaca Pension Fund by Defendant AJG, pursuant to Section 3(21) of ERISA [29 U.S.C. §§ 1002(21)(A)].

68. Further, Defendant GIAMMARINO is a fiduciary with respect to any contributions required to be made by Defendant AJG during the pendency of this action at the time such contributions become due and owing to the Funds.

69. Defendant GIAMMARINO breached his fiduciary duty with respect to the Ithaca Pension Fund by failing to effect payment from Defendant AJG to the Funds for covered work performed by its employees during the period May 1, 2019 through November 30, 2019 in violation of ERISA Section 409(a) [29 U.S.C. §1109].

70. Defendant AJG's failure to make payments due or timely effect payment of employee fringe benefit contributions to the Ithaca Pension Fund constitutes violations of the CBA, the Trust Agreement for the Ithaca Pension Fund, 29 U.S.C. § 301 and of Section 515 of ERISA (29 U.S.C. § 1145).

71. While Defendants eventually remitted some contributions owed for the period May 1, 2019 through October 31, 2019 to the Ithaca Pension Fund (*see* **Exhibit H**), such payments were late and required the assessment of interest and liquidated damages; Defendants have failed to remit any interest or liquidated damages.

72. Accordingly, pursuant to the CBA and Section 502 of ERISA (29 U.S.C. § 1132), Defendants AJG and GIAMMARINO are liable, jointly and severally, to Plaintiffs for:

3733621, 1, 063840.0007

a.  delinquent employee fringe benefit contributions to the Ithaca Pension Fund in the amount of $24,490.20 for covered work performed by Defendant AJG's employees during the period May 1, 2019 through November 30, 2019, plus any additional amounts which may become due and owing during the pendency of this lawsuit (*see* **Exhibit H**); and

b.  interest on the unpaid and/or untimely paid contributions in the amount of $3,210.47 calculated at the rate of two percent (2%) per month, compounded monthly, and calculated from the date the contributions were due, which shall continue to accrue during the pendency of this action (*id.*); and

c.  liquidated damages in the amount of $9,532.22, which is equal to twenty percent (20%) of the total delinquent contributions to the Ithaca Pension Fund (*id.*).

### AS AND FOR PLAINTIFFS' THIRD CLAIM FOR RELIEF

### (PLAINTIFFS' CLAIM AGAINST DEFENDANT AJG FOR DELINQUENT EMPLOYEE FRINGE BENEFIT CONTRIBUTIONS TO THE BAC 3 ANNUITY FUND)

73.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 72 of this Complaint, as if fully set forth herein.

74.  Pursuant to the CBA and the Trust Agreements, Defendant AJG was required to make full and timely payments to the Funds for all covered work performed by its employees at the rates and times set forth in the CBA.

75.  Union members were employed by Defendant AJG during the period May 1, 2019 through November 30, 2019 and performed work for Defendant AJG covered by the CBA.

76.  Defendant AJG would not pay, and indeed failed to pay, certain contributions to the BAC 3 Annuity Fund, as required by the CBA, for work performed by Defendant AJG's

3733621, 1, 063840.0007

employees during the period May 1, 2019 through November 30, 2019.

77.     Defendant AJG's failure to make payments due or timely effect payment of employee fringe benefit contributions to the BAC 3 Annuity Fund constitutes violations of the CBA, the Trust Agreement for the BAC 3 Annuity Fund, 29 U.S.C. § 301 and of Section 515 of ERISA (29 U.S.C. § 1145).

78.     While Defendants eventually remitted some contributions owed for the period May 1, 2019 through October 31, 2019 to the BAC 3 Annuity Fund (*see* **Exhibit H**) such payments were late and required the assessment of interest and liquidated damages; Defendants have failed to remit any interest or liquidated damages.

79.     Accordingly, pursuant to the CBA and Section 502 of ERISA (29 U.S.C. § 1132), Defendant AJG is liable to Plaintiffs for:

a.  delinquent employee fringe benefit contributions to the BAC 3 Annuity Fund in the amount of $6,933.38 for covered work performed by Defendant AJG's employees during the period May 1, 2019 through November 30, 2019, plus any additional amounts which may become due and owing during the pendency of this lawsuit (*see* **Exhibit H**); and

b.  interest on the unpaid and/or untimely paid contributions in the amount of $867.10 calculated at the rate of two percent (2%) per month, compounded monthly, and calculated from the date the contributions were due, which shall continue to accrue during the pendency of this action (*id.*); and

c.  liquidated damages in the amount of $2,458.57, which is equal to twenty percent (20%) of the total delinquent contributions to the BAC 3 Annuity Fund (*id.*).

3733621, 1, 063840.0007

## AS AND FOR PLAINTIFFS' FOURTH CLAIM FOR RELIEF

### (PLAINTIFFS' CLAIM AGAINST DEFENDANT AJG FOR DELINQUENT EMPLOYEE FRINGE BENEFIT CONTRIBUTIONS TO THE BAC 3 TRAINING FUND)

80.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 79 of this Complaint, as if fully set forth herein.

81.     Pursuant to the CBA and the Trust Agreements, Defendant AJG was required to make full and timely payments to the Funds for all covered work performed by its employees at the rates and times set forth in the CBA.

82.     Union members were employed by Defendant AJG during the period May 1, 2019 through November 30, 2019 and performed work for Defendant AJG covered by the CBA.

83.     Defendant AJG failed to pay certain contributions to the BAC 3 Training Fund, as required by the CBA, for work performed by Defendant AJG's employees during the period May 1, 2019 through November 30, 2019.

84.     While Defendants eventually remitted some contributions owed for the period May 1, 2019 through October 31, 2019 to the BAC 3 Training Fund (*see* **Exhibit H**), such payments were late and required the assessment of interest and liquidated damages; Defendants have failed to remit any interest or liquidated damages.

85.     Defendant AJG's failure to make payments due or timely effect payment of employee fringe benefit contributions to the BAC 3 Training Fund constitutes violations of the CBA, the Trust Agreement for the BAC 3 Training Fund, 29 U.S.C. § 301 and of Section 515 of ERISA (29 U.S.C. § 1145).

86.     Accordingly, pursuant to the CBA and Section 502 of ERISA (29 U.S.C. § 1132), Defendants AJG is liable to Plaintiffs for:

3733621, 1, 063840.0007

a. delinquent employee fringe benefit contributions to the BAC 3 Training Fund in the amount of $1,666.00 for covered work performed by Defendant AJG's employees during the period May 1, 2019 through November 30, 2019, plus any additional amounts which may become due and owing during the pendency of this lawsuit (*see* **Exhibit H**); and

b. interest on the unpaid and/or untimely paid contributions in the amount of $219.85 calculated at the rate of one percent (1.0%) per month, compounded monthly, and calculated from the date the contributions were due, which shall continue to accrue during the pendency of this action (*id.*); and

c. liquidated damages in the amount of $649.65, which is equal to twenty percent (20%) of the total delinquent contributions to the BAC 3 Training Fund (*id.*).

<u>**AS FOR PLAINTIFFS' FIFTH CLAIM FOR RELIEF**</u>

**(PLAINTIFFS' CLAIM AGAINST DEFENDANT AJG FOR DELINQUENT CONTRIBUTIONS TO THE ITHACA SAVINGS PLAN)**

87. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 86 of this Complaint, as if fully set forth herein.

88. Union members were employed by Defendant AJG during the period May 1, 2019 through November 30, 2019 and performed work for Defendant AJG covered by the CBA.

89. Defendant AJG failed to remit employee contributions to the Savings Plan during the period May 1, 2019 through November 30, 2019.

90. While Defendants eventually remitted some contributions owed for the period May 1, 2019 through October 31, 2019 to the Savings Plan (*see* **Exhibit H**), such payments were late and required the assessment of interest and liquidated damages; Defendants have failed to remit any interest or liquidated damages.

3733621, 1, 063840.0007

91.    Defendant AJG's failure to make payments due or timely remit employee contributions to the Ithaca Savings Plan constitutes a violation of the CBA and Collections Policies, and Section 301 of the LMRA [29 U.S.C. § 185].

92.    Accordingly, pursuant to the CBA and the Collections Policies, Defendant AJG is liable to Plaintiffs for:

a.   delinquent remittance of employee contributions to the Ithaca Savings Plan of $2,165.80 for the period May 1, 2019 through November 30, 2019, plus any additional amounts which may become due during the pendency of this lawsuit; and

b.   interest on the unpaid and/or untimely paid contributions in the amount of $263.54, calculated at the rate of two (2%) per month, compounded monthly, and calculated from the date the contributions were due, which shall continue to accrue during the pendency of this action; and

c.   liquidated damages in the amount of $725.99, which is equal to twenty percent (20%) of the total delinquent employee contributions to the Ithaca Savings Plan (*id.*).

**AS FOR PLAINTIFFS' SIXTH CLAIM FOR RELIEF**

**(PLAINTIFFS' CLAIM AGAINST DEFENDANT AJG FOR
DELINQUENT CONTRIBUTIONS TO THE J.A.B. FUND)**

93.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 92 of this Complaint, as if fully set forth herein.

94.    Union members were employed by Defendant AJG during the period May 1, 2019 through November 30, 2019 and performed work for Defendant AJG covered by the CBA.

95.    Defendant AJG failed to pay contributions to the J.A.B. Fund during the period

20

May 1, 2019 through November 30, 2019.

96.     Defendant AJG's failure to make payments due or timely remit employee contributions to the J.A.B. Fund constitutes a violation of the CBA and Collections Policies, and Section 301 of the LMRA [29 U.S.C. § 185].

97.     While Defendants eventually remitted some contributions owed for the period May 1, 2019 through October 31, 2019 to the J.A.B. Fund (*see* **Exhibit H**), such payments were late and required the assessment of interest and liquidated damages; Defendants have failed to remit any interest or liquidated damages.

98.     Accordingly, pursuant to the CBA and the Collections Policies, Defendant AJG is liable to Plaintiffs for:

a.   delinquent contributions to the J.A.B. Fund of $2,998.80 the period May 1, 2019 through November 30, 2019, plus any additional amounts which may become due during the pendency of this lawsuit (*see* **Exhibit H**); and

b.   interest on the unpaid and/or untimely paid contributions in the amount of $395.72, calculated at the rate of two (2%) per month, compounded monthly, and calculated from the date the contributions were due, which shall continue to accrue during the pendency of this action (*id.*); and

c.   liquidated damages in the amount of $1,169.37, which is equal to twenty percent (20%) of the total delinquent employee contributions to the J.A.B. Fund (*id.*).

21

## AS FOR PLAINTIFFS' SEVENTH CLAIM FOR RELIEF

### (PLAINTIFFS' CLAIM AGAINST DEFENDANT AJG FOR DELINQUENT CONTRIBUTIONS TO THE LM FUND)

99.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 98 of this Complaint, as if fully set forth herein.

100.    Union members were employed by Defendant AJG during the period May 1, 2019 through November 30, 2019 and performed work for Defendant AJG covered by the CBA.

101.    Defendant AJG failed to remit employee contributions to the LM Fund during the period May 1, 2019 through November 30, 2019.

102.    Defendant AJG's failure to make payments due or timely remit employee contributions to the LM Fund constitutes a violation of the CBA and Collections Policies, and Section 301 of the LMRA [29 U.S.C. § 185].

103.    While Defendants eventually remitted some contributions owed for the period May 1, 2019 through October 31, 2019 to the LM Fund (*see* **Exhibit H**), such payments were late and required the assessment of interest and liquidated damages; Defendants have failed to remit any interest or liquidated damages.

104.    Accordingly, pursuant to the CBA and the Collections Policies, Defendant AJG is liable to Plaintiffs for:

    a.  interest on or untimely paid LM Fund contributions in the amount of $1.26, calculated at the rate of two (2%) per month, compounded monthly, and calculated from the date the contributions were due, which shall continue to accrue during the pendency of this action (**Exhibit H**); and

    b.  liquidated damages in the amount of $5.68, which is equal to twenty percent (20%) of the total delinquent employee contributions to the Ithaca Savings Plan

22

(*id.*).

## AS AND FOR PLAINTIFFS' EIGHTH CLAIM FOR RELIEF

### (PLAINTIFFS' CLAIM AGAINST DEFENDANT AJG FOR UNREMITTED UNION MEMBERSHIP DUES AND ASSESSMENTS)

105.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 104 of this Complaint, as if fully set forth herein.

106.    Union members were employed by Defendant AJG during the period May 1, 2019 through November 30, 2019 and performed work for Defendant AJG covered by the CBA.

107.    Pursuant to the CBA, Defendant AJG must pay monies withheld from employees' wages in the form of membership dues and assessments, including PAC and Organization Fund assessments, directly to Plaintiff Union for all hours worked by its employees covered by the CBA.

108.    Defendant AJG withheld Union membership dues and assessments from its employees that performed work covered by the CBA during the period May 1, 2019 through November 30, 2019.

109.    Defendant AJG has failed to remit certain membership dues and assessments withheld by Defendant AJG from employees' wages to Plaintiff Union for covered work performed by its employees during the period May 1, 2019 through November 30, 2019.

110.    While Defendants eventually remitted some dues and assessments owed for the period May 1, 2019 through October 31, 2019 to Plaintiff Union (*see* **Exhibit H**), such payments were late and required the assessment of interest and liquidated damages; Defendants have failed to remit any interest or liquidated damages.

111.    Accordingly, pursuant to the CBA, Defendant AJG is liable to Plaintiffs for:

   a.    unpaid membership dues and assessments, including PAC and Organizational

3733621, 1, 063840.0007

Fund assessments, in the amount of $8,900.28 for covered work performed by its employees during the period May 1, 2019 through November 30, 2019 plus any additional amounts which may come due during the pendency of this lawsuit (*see* **Exhibit H**); and

b.  interest on the unpaid and/or untimely paid contributions in the amount of $1,179.07 calculated at the rate of two percent (2%) per month, compounded monthly, and calculated from the date the contributions were due, which shall continue to accrue during the pendency of this action (*id.*); and

c.  liquidated damages in the amount of $3,473.31 which is equal to twenty percent (20%) of the total delinquent employee contributions to the Ithaca Savings Plan (*id.*).

### AS AND FOR PLAINTIFFS' NINTH CLAIM FOR RELIEF

### (PLAINTIFFS' CLAIM AGAINST DEFENDANT AJG FOR UNREMITTED ASP CONTRIBUTIONS)

112.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 111 of this Complaint, as if fully set forth herein.

113.    Union members were employed by Defendant AJG during the period May 1, 2019 through November 30, 2019 and performed work for Defendant AJG covered by the CBA.

114.    Pursuant to the CBA, Defendant AJG must remit ASP contributions to the Funds for all hours worked by its employees covered by the CBA.

115.    Defendant AJG failed to remit ASP contributions to the Funds for covered work performed during the period May 1, 2019 through November 30, 2019.

116.    While Defendants eventually remitted some contributions owed for the period May 1, 2019 through October 31, 2019 to the ASP (*see* **Exhibit H**), such payments were late and

24

required the assessment of interest and liquidated damages; Defendants have failed to remit any interest or liquidated damages.

117.    Accordingly, pursuant to the CBA, Defendant AJG is liable to Plaintiffs for:

a.    Unremitted ASP contributions, in the amount of $666.40 for covered work performed by its employees during the period May 1, 2019 through November 30, 2019 plus any additional amounts which may come due during the pendency of this lawsuit (*see* **Exhibit H**); and

b.    interest on the unpaid and/or untimely paid contributions in the amount of $92.04 calculated at the rate of two percent (2%) per month, compounded monthly, and calculated from the date the contributions were due, which shall continue to accrue during the pendency of this action (*id.*); and

c.    liquidated damages in the amount of $281.92 which is equal to twenty percent (20%) of the total delinquent employee contributions to the Ithaca Savings Plan (*id.*).

### AS AND FOR PLAINTIFFS' TENTH CLAIM FOR RELIEF

### (PLAINTIFFS' CLAIM AGAINST DEFENDANT AJG FOR ATTORNEYS' FEES)

118.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 117 of this Complaint, as if fully set forth herein.

119.    Pursuant to Section 502(g) of ERISA [29 U.S.C. § 1132(g)], Plaintiffs are entitled to an award of reasonable attorneys' fees and costs incurred in attempting to collect delinquent employee benefit fund contributions, and such other legal or equitable relief as the court deems appropriate.

120.    Pursuant to the Collections Policies, Plaintiffs are entitled to all attorneys' fees,

3733621, 1, 063840.0007

25

paralegal fees, accountants' fees, audit fees and other costs of collection of all required fund contributions, dues and assessments.

121.   Accordingly, Plaintiffs are entitled to a judgment requiring Defendant AJG to reimburse Plaintiffs for all attorneys' fees and paralegals' fees, court costs, disbursements and expenses incurred by the Funds in attempting to collect and in collecting monies owed to the Funds.

**WHEREFORE,** Plaintiffs demand judgment:

(a) On Plaintiffs' First Claim for relief, against Defendant AJG and GIAMMARINO for payment of delinquent employee fringe benefit contributions to the Ithaca Welfare Fund for the period May 1, 2019 through November 30, 2019 in the amount of $24,323.60 plus any further fringe benefit contributions that may become due and owing to the Ithaca Welfare Fund during the pendency of this action, together with interest on the unpaid Ithaca Welfare Fund contributions in the amount of $3,238.02, calculated at the rate of 2% per month, which interest shall continue to accrue during the pendency of this action, and liquidated damages to the Ithaca Welfare Fund in the amount of $9,667.29, calculated as 20% of the total delinquent contributions; and

(b) On Plaintiffs' Second Claim For Relief, against Defendants AJG and GIAMMARINO for payment of delinquent employee fringe benefit contributions to the Ithaca Pension Fund for the period May 1, 2019 through November 30, 2019 in the amount of $24,490.20 plus any further fringe benefit contributions that may become due and owing to the Ithaca Pension Fund during the pendency of this action, together with interest on the delinquent contributions in the amount of

26

$3,210.47 calculated at the rate of 2% per month, which interest shall continue to accrue during the pendency of this action, and liquidated damages to the Ithaca Pension Fund in the amount of $9,532.22, calculated as 20% of the total delinquent contributions; and

(c) On Plaintiffs' Third Claim for Relief against Defendant AJG for payment of delinquent contributions to the BAC 3 Annuity Fund for the period May 1, 2019 through November 30, 2019 in the amount of $6,933.38 plus any further contributions that may become due and owing to the BAC 3 Annuity Fund during the pendency of this action, together with interest on the delinquent contributions in the amount of $867.10, calculated at the rate of 2% per month, which interest shall continue to accrue during the pendency of this action, and liquidated damages to the BAC 3 Annuity Fund in the amount of $2,458.57, calculated as 20% of the total delinquent contributions; and

(d) On Plaintiffs' Fourth Claim for Relief against Defendant AJG for payment of delinquent contributions to the BAC 3 Training Fund for the period May 1, 2019 through November 30, 2019 in the amount of $1,666.00 plus any further contributions that may become due and owing to the BAC 3 Training Fund during the pendency of this action, together with interest on the delinquent contributions in the amount of $219.85, calculated at the rate of 2% per month, which interest shall continue to accrue during the pendency of this action, and liquidated damages to the BAC 3 Training Fund in the amount of $649.65, calculated as 20% of the total delinquent contributions; and

(e) On Plaintiffs' Fifth Claim for Relief against Defendant AJG for payment of

3733621, 1, 063840.0007

delinquent remittances to the Ithaca Savings Plan for the period May 1, 2019 through November 30, 2019 in the amount of $2,165.80 plus any further remittances that may become due and owing to the Ithaca Savings Plan during the pendency of this action, together with interest on the delinquent remittances in the amount of $263.54, calculated at the rate of 2% per month, which interest shall continue to accrue during the pendency of this action, and liquidated damages to the Ithaca Savings Plan in the amount of $725.99, calculated as 20% of the total delinquent remittances; and

(f)  On Plaintiffs' Sixth Claim for Relief against Defendant AJG for payment of delinquent contributions to the J.A.B. Fund for the period May 1, 2019 through November 30, 2019 in the amount of $2,998.80 plus any further contributions that may become due and owing to the J.A.B. Fund during the pendency of this action, together with interest on the delinquent contributions in the amount of $395.72, calculated at the rate of 2% per month, which interest shall continue to accrue during the pendency of this action, and liquidated damages to the J.A.B. Fund in the amount of $1,169.37, calculated as 20% of the total delinquent contributions; and

(g)  On Plaintiffs' Seventh Claim for Relief against Defendant AJG for payment of interest on the delinquent contributions to the LM Fund for the period May 1, 2019 through November 30, 2019 in the amount of $1.26, calculated at the rate of 2% per month, which interest shall continue to accrue during the pendency of this action, and liquidated damages to the LM Fund in the amount of $5.68, calculated as 20% of the total delinquent contributions; and

3733621, 1, 063840.0007

(h) On Plaintiffs' Eighth Claim for Relief against Defendant AJG for payment of delinquent union dues and assessments, including PAC and Organization Fund assessments, for the period May 1, 2019 through November 30, 2019 in the amount of $8,900.28 plus any further union dues and assessments that may become due and owing during the pendency of this action, together with interest on the delinquent union dues and assessments in the amount of $1,179.07, calculated at the rate of 2% per month, which interest shall continue to accrue during the pendency of this action, and liquidated damages in the amount of $3,473.31, calculated as 20% of the total delinquent union dues and assessments; and

(i) On Plaintiffs' Ninth Claim for Relief against Defendant AJG for payment of delinquent ASP contributions for the period May 1, 2019 through November 30, 2019 in the amount of $666.40 plus any further ASP contributions that may become due and owing during the pendency of this action, together with interest on the delinquent contributions in the amount of $92.04, calculated at the rate of 2% per month, which interest shall continue to accrue during the pendency of this action, and liquidated damages in the amount of $281.92, calculated as 20% of the total delinquent ASP contributions; and

(j) On Plaintiffs' Tenth Claim for Relief, judgment awarding to Plaintiffs all attorneys' fees, paralegals' fees, court costs, disbursements and expenses incurred by Plaintiffs in attempting to collect and in collecting monies owed to the Funds; and

(k) Granting such other and further relief as this Court deems just and proper.

3733621, 1, 063840.0007

30

Dated:        January 20, 2020                    Lipsitz Green Scime Cambria, LLP
              Buffalo, New York

                                                  s/ Joseph L. Guza
                                                  Joseph L. Guza, Esq.
                                                  *Attorneys for Plaintiffs*
                                                  42 Delaware Avenue, Suite 120
                                                  Buffalo, New York 14202
                                                  (716) 849-1333 ext. 483
                                                  jguza@lglaw.com

30

3733621, 1, 063840.0007